UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LAW OFFICE G.A. LAMBERT AND
ASSOCIATES,

       Plaintiff,

       v.

TOFIK DAVIDOFF, *et al.*,

       Defendants.

Civil Action No. 13-1734 (CKK)

**MEMORANDUM OPINION**
(August 15, 2014)

Plaintiff, the Law Office G.A. Lambert and Associates ("Plaintiff"), has filed an action against its former clients, Defendants Tofik Davidoff, Kalimantano GmbH, and First Royal Services GmbH ("Defendants"), alleging that Defendants defrauded Plaintiff and failed to pay legal fees and costs owed to Plaintiff. Presently before this court is Plaintiff's [19] Request for Default Judgment, or, in the Alternative, Motion for Default Judgment. Upon consideration of the parties' submissions[1], the relevant legal authorities, and the record as a whole, the Court concludes, for the reasons stated below, that (1) it would not be appropriate to vacate the entry of default against Defendants at this time, and (2) Plaintiff's [19] Request for Default Judgment, or, in the Alternative, Motion for Default Judgment is DENIED WITHOUT PREJUDICE.

---

[1] Pl.'s Complaint, ECF No. [1] ("Compl."); Pl.'s Request for Default J., or, in the Alt., Mot. for Default J., ECF No. [19] ("Pl.'s Mot."); Pl.'s Brief in Resp. to Court Order of February 28, 2014, ECF No. [22] ("Pl.'s Resp.").

# I. BACKGROUND

## A. Factual Background

Plaintiff's Complaint sets out the following allegations, which the Court takes as true for purposes of Plaintiff's motion for default judgment. *See Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002). Plaintiff is a District of Columbia law office headed by Attorney George A. Lambert ("Lambert"). Compl. ¶ 1. Defendant Tofik Davidoff ("Davidoff") is a German national, who is closely allied with two German companies: Defendants Kalimantano GmbH ("Kalimantano") and First Royal Services GmbH ("First Royal"). *Id.* ¶¶ 2-4. On September 3, 2012, Davidoff executed a retainer contract with Plaintiff. *Id.* ¶ 8. Under the terms of the retainer contract, Plaintiff represented Davidoff and, as needed, the entities, in which Davidoff was the principal. *Id.* ¶¶ 2, 9. Plaintiff also represented Kalimantano's employee, Konstantin Felde, and First Royal's Manager, Johannes Schwegler. *Id.* ¶ 10. Defendant First Royal is connected to this suit because it "was proposed to be a third-party payer and guarantor on the invoices to Davidoff and Kalimantano." *Id.* ¶ 4. Plaintiff represented Defendants Davidoff and Kalimantano in several suits brought in the United States District Court for the Southern District of New York and the United States District Court for the District of Columbia. *See id.* ¶ 7, 11-17. The parties conducted business together for approximately nine months before payment issues began to arise. *Id.* ¶ 18. After receiving a May 6, 2013 invoice from Plaintiff, Davidoff made numerous excuses for why payment was not forthcoming. *Id.* ¶ 18-32.

Several months after the May 6, 2013 invoice, Plaintiff had still not received payment from Defendants. On October 21, 2013, Davidoff sent the law office a copy of a transaction showing that 15,000 Euros were deducted from one of First Royal's accounts on that date. *Id.*

However, this money never reached Plaintiff. *Id.* ¶¶ 35-38. On October 30, 2013, Davidoff unexpectedly told Plaintiff that a settlement agreement had been reached in the only remaining lawsuit for which Plaintiff represented Defendants Davidoff and Kalimantano – a pending matter in the United States District Court for the Southern District of New York. *Id.* ¶ 40. Davidoff denied that he owed anything to Plaintiff, and also denied that any purported attempts to pay or wire funds took place. *Id.* ¶¶ 44-45. Nevertheless, on November 1, 2013, Attorney Lambert made a motion to withdraw from the pending matter in the United States District Court for the Southern District of New York. *Id.* ¶ 47. Upon being served with the motion, Davidoff claimed he did not know where to wire the payments to the Plaintiff. *Id.* ¶ 48.

### B. Procedural History

Plaintiff filed its Complaint in this Court on November 4, 2013, alleging five counts: (1) "Breach of Contract", (2) "Quantum Meruit, Promissory Estoppel", (3) "Misrepresentation and Fraud", (4) "Fraud; False Wire Transfer Banking Document", and (5) "Fraud; False Wire Transfer Banking Document; Forgery." Compl. ¶¶ 52-92. Defendants were purportedly served with the Complaint and Summons on December 17, 2013, and were therefore required to respond by January 7, 2014. *See* Pl.'s Proof of Service Affidavits, ECF Nos. [10]-[12]. Defendants failed to file an answer or otherwise respond to the Complaint in this Court by this deadline, and therefore on February 7, 2014, Plaintiff moved for entry of default against all three Defendants. *See* Pl.'s Aff. in Support of Default, ECF No. [16]. The Clerk of the Court subsequently entered default against all three Defendants on February 10, 2014. *See* Clerk's Entry of Default, ECF No. [18]. The following day, Plaintiff filed the present [19] Request for Default Judgment, or, in the Alternative, Motion for Default Judgment. The present motion, mirroring the Complaint, seeks default judgment against Defendants Davidoff and Kalimantano

GmbH, jointly and severally for damages and costs totaling $166,158.19, and against Defendant First Royal Services GmbH for damages totaling $20,508.45.

On February 27, 2014, the Clerk of the Court received a [20] letter from Defendants in response to the Entry of Default. Defendants state in this letter, dated February 20, 2014, that they received Plaintiff's complaint on December 13, 2013. Defs.' Letter (Feb. 20, 2014), ECF No. [20] at 1. Defendants state that their German attorney e-mailed a response to this action to Plaintiff's counsel on January 2, 2014. *Id.* Apparently not understanding that a responsive filing needed to be made with the Court, Defendants state that "[o]ur attorney and we ourselves responded to Mr. Lambert's action in a timely manner and did not miss any deadlines . . . ." *Id.* Defendants also attach (in both English and German) the letter they sent Plaintiff's counsel which states that "[w]e oppose against [sic] your action against the three defendants and request to dismiss the actions. Furthermore, we herewith submit the objection against having the United States as place of jurisdiction." *Id.* at 8. This letter also includes factual objections to Plaintiff's claims. *Id.* ("As reported by my clients there are no more fee claims to be settled, your attorney fee has already been paid in full.").

In light of this filing, the Court ordered Plaintiff to file a supplemental brief explaining why it would not be appropriate to deny Plaintiff's motion for default judgment and vacate the entry of default. *See* Order, ECF No. [21] at 3. The Court invited Defendants to respond to this briefing, and further advised Defendants that if they planned to contest this lawsuit going forward, they or their counsel should enter an appearance on the docket. *Id.* at 3-4. The Court instructed Defendants to enter such an appearance by no later than April 24, 2014. *Id.* at 4.

Plaintiff subsequently filed its supplemental brief arguing that, despite Defendant's letter, the Court should not vacate the entry of default and should grant Plaintiff's motion for default

4

judgment. Pl.'s Resp. Defendants did not respond to this filing, despite the Court's invitation. However, on March 19, 2014, the Clerk of the Court received a second letter from Defendants dated March 13, 2014. Defs.' Letter (Mar. 13, 2014), ECF No. [24]. In this letter, Defendants contest the allegations made by Plaintiff, arguing that Plaintiff "constantly and deliberately provides false information to the court in order to gain advantages with the court." *Id.* at 1. The letter also encloses what Defendants describe as their contract with Plaintiff, which differs from the version of the contract provided by Plaintiff. *Id.* at 3-4. Defendants conclude by requesting "that this matter [be] referred to German courts, as [they] are all German nationals with a permanent place of business and permanent place of residence in the Federal Republic of Germany." *Id.* at 1.

In response to Defendants' second letter, the Court issued an order granting leave to file this document and its attachments, albeit with several caveats. *See* Order, ECF No. [23]. As an initial matter, the document could only be filed on behalf of Defendant Davidoff, a German national. *Id.* at 2. The remaining Defendants, as corporations, could not proceed *pro se* in this Court, and therefore the Court denied leave to file the letter on their behalf. *Id.* (citing *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201-02 (1993) ("It has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel.")). The Court also advised Defendants that their repeated letters were insufficient to serve as pleadings in this action, and thus could not be used to defeat Plaintiff's claims or its motion for default judgment. *Id.* (citing LCvR 5.1(a) ("Except when requested by a judge, correspondence shall not be directed by the parties or their attorneys to a judge, nor shall papers be left with or mailed to a judge for filing.")). The Court further noted that the letter consisted of general denials rather than a specific response to the allegations in Plaintiff's complaint and the

5

arguments in Plaintiff's motion for default judgment. *Id.* at 3. Furthermore, although Defendants' letter argued that this action should be transferred to German courts, Defendants had failed to file a motion formalizing this request or providing the legal basis for such a transfer. *Id.* Therefore, the Court again reminded Defendants of the April 24, 2014 deadline for entering an appearance in this action. *Id.* While Defendant Davidoff could file a brief on his own behalf without the assistance of counsel, the remaining corporate Defendants were required to file any response through licensed counsel. *Id.* The Court warned Defendants that if they failed to file a response by the April 24, 2014 deadline, they risked the imposition of default judgment against them. *Id.* The Court also offered to extend this deadline if Defendants demonstrated good cause. *Id.*

Despite the Court's admonitions, Defendants failed to make any filing by the April 24, 2014 deadline. An attorney purporting to represent Defendants did contact chambers by telephone in the days preceding this deadline to inquire about an extension of the April 24, 2014 deadline. The Court instructed the attorney that such an extension request could not be made over the telephone and had to be made via motion pursuant to the Federal Rules of Civil Procedure and the Local Rules of this Court. However, no extension request was ever made. Instead, on May 12, 2014, the Court of the Clerk received another three letters, one from each Defendant. Davidoff Letter (May 2, 2014), ECF No. [25]; First Royal Letter (May 2, 2014), ECF No. [26]; Kalimantano Letter (May 2, 2014), ECF No. [27]. The Court denied leave to file the letters from Defendants Kalimantano and First Royal, as these Defendants are corporations not entitled to proceed *pro se*. In his letter, Defendant Davidoff represents that no contract exists between him and Plaintiff, and thus Plaintiff's suit for breach of contract is meritless. Davidoff Letter (May 2, 2014), ECF No. [25] at 1. Defendant Davidoff also offers additional allegations

6

regarding his relationship with Plaintiff that support his contention of no liability, including the allegation that he "ha[d] never ordered Mr. Lambert, Attorney at Law, to represent [him] at court." *Id.* Defendant Davidoff's letter concludes with a "request that German courts assume jurisdiction for this civil matter."[2] *Id.*

Given this factual and procedural background, the Court now analyzes two issues. First, whether, in light of Defendants' informal and sporadic participation in this lawsuit, it is appropriate to vacate the entry of default against these Defendants. Second, if the default should not be vacated, whether Plaintiff is entitled to the entry of default judgment in its favor.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55(a) provides that the Clerk of the Court must enter a party's request for a default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). "[O]nce a defendant fails to file a responsive answer, he is in default." *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980). Nevertheless, "[t]he court may set aside an entry of default for good cause . . . ." Fed. R. Civ. P. 55(c). In applying this standard, "the court must assess whether the default is willful, whether the defendant has presented a meritorious defense, and whether the plaintiff would suffer substantial prejudice by a decision to set aside the default . . . ." *Whelan v. Abell*, 48 F.3d 1247, 1259 (D.C. Cir. 1995) (citing *Jackson*, 636 F.2d at 835).

After a default has properly been entered by the Clerk, a party may move the court for a

---

[2] Defendant Davidoff's letter also states that "[a]s [he] is a German citizen, [the Court is], according to German laws, obligated to create every letter to [him] in the German language or to have such translated into the German language." *Id.* Defendant cites no authority for this proposition, and neither the Court nor the Clerk's office is aware of any such obligation in a case involving foreign parties.

default judgment. Fed. R. Civ. P. 55(b)(2). "The determination of whether default judgment is appropriate is committed to the discretion of the trial court." *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008) (citing *Jackson*, 636 F.2d 831 at 836). Upon entry of default by the clerk of the court, the "defaulting defendant is deemed to admit every well-pleaded allegation in the complaint." *R.W. Amrine Drywall Co., Inc.*, 239 F.Supp.2d at 30 (internal citation omitted). "Although the default establishes a defendant's liability, the court is required to make an independent determination of the sum to be awarded unless the amount of damages is certain." *Id.* (citing *Adkins v. Teseo*, 180 F.Supp.2d 15, 17 (D.D.C. 2001)). Accordingly, when moving for a default judgment, the plaintiff must prove its entitlement to the amount of monetary damages requested. *Id.* "In ruling on such a motion, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Id.*

### III. DISCUSSION

#### A. Entry of Default

The Court first addresses whether it would be appropriate to set aside the entry of default against Defendants in this case. To be clear, Defendants have filed no formal motion requesting that the entry of default against them be set aside pursuant to Federal Rule of Civil Procedure 55(c). Nevertheless, in light of Defendants' letters, which state that Defendants did respond to Plaintiff within the time period for filing a responsive pleading and generally deny Plaintiff's allegations, the Court has raised the issue of the appropriateness of the default *sua sponte*. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 386 (7th Cir. 2008) ("we believe that the district court had the authority to set aside *sua sponte* an entry of default against LMC for good cause."); 10A C. Wright & A. Miller et al., Federal Practice and

Procedure § 2692 (3d ed. 2006) ("Although Rule 55(c) envisions a formal motion for relief, the courts have shown considerable leniency in treating other procedural steps as equivalent to a motion, particularly when the conduct evidences a desire to correct the default."). The D.C. Circuit has set out "three criteria" to consider "in deciding whether to set aside [a] default: 'whether (1) the default was willful, (2) a set-aside would prejudice plaintiff, and (3) the alleged defense was meritorious.'" *Jackson*, 636 F.3d at 836 (quoting *Keegel v. Key West & Caribbean Trading Co., Inc.*, 627 F.2d 372, 374 (D.C. Cir. 1980)).

Here, the Court finds that the first factor does not clearly weigh in favor of setting aside Defendant's default. Although Defendants' initial failure to respond to the Complaint may have been due to confusion regarding the American legal system, their disregard (and arguable defiance) of the Court's subsequent Orders inviting them to participate in this action suggests that their failure to participate in this action has been willful. *See Int'l Painters & Allied Trades Union & Indus. Pension Fund v. H.W. Ellis Painting Co.*, 288 F.Supp.2d 22, 26 (D.D.C. 2003) ("The boundary of willfulness lies somewhere between a case involving a negligent filing error, which is normally considered an excusable failure to response, and a deliberate decision to default, which is generally not excusable."). The Court's previous orders in this case have clearly informed Defendants of the consequences of their failure to formally respond to Plaintiff's filings and urged them to participate formally in this litigation. *See* Order, ECF No. [21]; Order, ECF No. [23]. To be sure, Defendants have repeatedly indicated a desire to contest Plaintiff's lawsuit, but they have also repeatedly been informed by the Court that they are proceeding in a procedurally improper manner. Despite these continual warnings, Defendants have continued to send letters containing general denials of Plaintiff's allegations. In light of Defendants' disregard of the Court's orders providing detailed instructions for how to contest

this lawsuit, the Court cannot dismiss the possibility that Defendant's failure to participate in this lawsuit has been willful. In the absence of evidence to the contrary from Defendants, the Court does not find this factor weighs in favor of setting aside the entry of default at this time.

Turning to the second factor, the Court finds that setting aside the entry of default here would arguably prejudice Plaintiff, as it would leave this case in procedural limbo. As noted, Defendants have not filed a motion to vacate the entry of judgment. Rather, the Court has raised this issue *sua sponte* in light of Defendants' letters. The Court therefore has no indication from Defendants that they plan to actively participate in this litigation should the default be set aside. It would surely be a futile exercise to vacate the entry of default *sua sponte* now, only to have Defendants continue their unresponsiveness and precipitate a subsequent re-entry of default later. Accordingly, a decision to set aside the entry of default without any suggestion that Defendants would actually participate as a result would stay the prosecution of this case indefinitely. *See H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970) ("the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to rights. The default judgment remedy serves as such a protection."). This is not simply a situation where vacating the default would delay proceedings. *Cf. Keegel*, 627 F.2d at 374 (noting, in a situation where defendants filed a proposed answer, that the argument "that setting aside the default would delay satisfaction of plaintiffs' claim, should plaintiffs succeed at trial [was] insufficient to" justify denial of motion to vacate). Rather, vacating the default here, without any assurance that Defendants will participate, will leave this case at a standstill, with no clear way forward. In light of the delay and uncertainty that could result from setting aside the entry of default, the Court finds, on the present record, potential prejudice to Plaintiff from vacating the Clerk's order of default. *See Cinctec Intern., Ltd. v.*

*Parkes*, 468 F.Supp.2d 77, 79 (D.D.C. 2006) (finding, in the context of a request to set aside a default judgment, that "the plaintiffs have been prejudiced by the repeated and willful delays of the defendant."). Accordingly, the Court does not find that the second factor weighs in favor of vacating the entry of default.

The third factor – Defendants' allegation of a meritorious defense – does not compel a different result. Certainly, Defendants have mentioned various defenses to Plaintiff's Complaint in their letters and, as the D.C. Circuit has held, "Defendants' allegations are meritorious if they contain even a hint of a suggestion which, proven at trial, would constitute a complete defense." *Keegel*, 627 F.2d at 374 (internal citation and quotation marks omitted). *See also Canales v. A.H.R.E.*, 254 F.R.D. 1, 11 (D.D.C. 2008) (requiring that the asserted defense be one that "may be proven at trial," but not mandating that the defendant prove the defense in a motion to set aside default). Specifically, Defendants object to the adjudication of this matter in this Court[3] and argue that Plaintiff has received all fees owed. *See, e.g.,* Defs.' Letter (Mar. 13, 2014). They also argue that Plaintiff has provided the Court with false information, including a different version of the contract between the parties. *Id.* Yet even though Defendants have mentioned these issues with Plaintiff's Complaint in their letters, there remains the problem of Defendants' apparent refusal to participate in this litigation. *Even if* the defenses raised in Defendants' letters are meritorious, the Court will have no opportunity to adjudicate the merits of these defenses

---

[3] The Court notes that neither version of the contract provided by the parties provides for adjudication of disputes in German courts. Rather, with respect to venue for fee disagreements, both versions of the contract state only that "ATTORNEY and CLIENT agree to resolve all fee disputes by binding arbitration before the Legal Fees Arbitration of the Bar Association of the District of Columbia." Defs.' Letter (Mar. 13, 2014), ECF No. [24] at 4; Pl.'s Mot., Ex. 1, Ex. A (Sept. 3, 2012 Agreement) at 2. Plaintiff represents that "Defendants declined to submit themselves to the arbitration in Washington, D.C., too, that could have streamlined the determination of the fees." Pl.'s Resp. at 9.

unless and until Defendants *appear* in this action. Therefore, this factor does not persuade the Court to vacate the entry of default against Defendants at this time.

Although the Court declines to *sua sponte* vacate the entry of default at this time, it emphasizes that it would be receptive to an argument via motion from Defendants as to why the entry of default against them was inappropriate. As discussed, *infra*, the Court also uses this Memorandum Opinion to deny without prejudice Plaintiff's request for default judgment and require Plaintiff to submit any revised motion for default judgment no earlier than October 1, 2014. At any point in the interim, Defendants remain free to follow the Court's repeated instructions that they enter a formal appearance in this matter and abide by the Federal Rules of Civil Procedure and the Local Rules of this Court in contesting Plaintiff's Complaint as well as the entry of default of judgment against them. As noted previously, Defendant Davidoff is permitted to proceed *pro se*. However, Defendants Kalimantano and First Royal Services, as corporations, may only proceed through legal counsel authorized to participate in proceedings before this Court. As should be clear from the foregoing, further letters from Defendants would be *insufficient* to justify setting aside the entry of default in this case, as such letters would indicate willful disregard of this Court's orders as well as no clear intent to formally participate in the defense of this litigation going forward.

### B. Plaintiff's Motion for Default Judgment

For the reasons discussed, the Court declines to *sua sponte* vacate the entry of default against Defendants. Therefore, the Court proceeds to consideration of Plaintiff's motion for default judgment, which requests a total of $166,158.19 in damages and costs from Defendants. Pl.'s Mot. As noted, although the default establishes a defendant's liability, the Court must make an independent determination of the sum to be awarded in the judgment where, as here, the

amount of damages is uncertain. *Adkins*, 180 F. Supp. 2d at 17. When moving for a default judgment, the plaintiff must prove its entitlement to the amount of monetary damages requested. *R.W. Amrine Drywall Co., Inc.*, 239 F.Supp.2d at 30. "In ruling on such a motion, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Id.*

Here, Plaintiff's showing of its entitlement to the amount of damages requested is plainly lacking. Plaintiff requests a total of $166,158.19 from Defendants. Pl.'s Mot., Ex. 1 (Affidavit in Support of Judgment By Default) ¶ 2. As support for this amount, Plaintiff has submitted an affidavit from Attorney Lambert. *Id.* However, with respect to Defendant's unpaid legal fees and costs, Attorney Lambert's Affidavit asserts only that "the costs of $16,575.03, accumulated since May 6, 2013, as well as the unpaid invoice of May 6, 2013, for $8,261.28 remained unpaid. The unpaid attorney's work from May 6 to November 1, 2013, amounted to 315.7 hours, with the total of $78,925.00 due (at the rate of $250). The grand total, overdue, was $103,761.31." *Id.* ¶ 24. As an Exhibit to the Affidavit, Plaintiff provides the Court with apparent documentary evidence of the debt of $103,761.31. Pl.'s Mot., Ex. 1, Ex. G (Consolidated Invoices). Plaintiff requests an additional $400.00 for the costs associated with filing this action.

However, Plaintiff does not provide this Court with any legal support for its demand for an additional $61,996.88 in damages. For these remaining damages, Plaintiff includes the following:

> [O]n June 21, 2013, Davidoff sent to the Law Office a copy of the bank instruction by Kalimantano to transfer 8,000 Euros (subject to the exchange rate 1.3111249), for the total $10,489.99. Per Count 4 of the Complaint, the additional damages constitute $20,979.98….

> On October 21, 2013, Davidoff e-mailed to the Law Office a false copy of the purported transaction on the account of First Royal, as though 15,000 Euros were deducted from First Royal's account and wired out to the Law Office.
>
> As mentioned above, the unpaid 15,000 Euros on October 21, 2013 were subject to the exchange rate of 1.367230, for the total of $20,508.45. Under Count 5, the Law Office is entitled also to the additional damages of $41,016.90.

Pl.'s Mot., Ex. 1 ¶¶ 26, 28-22 (citations omitted). This description of the basis for Plaintiff's additional damages is too brief to justify relief. With respect to the first set of damages – totaling $20,979.98 – Plaintiff cites to Count Four of its Complaint, entitled "Fraud; False Wire Transfer Banking Document." Compl. ¶¶ 72-80. Yet Plaintiff fails to provide any legal basis in its present motion that would entitle it to full compensatory damages for the amount in the transfer at issue. Similarly, Plaintiff appears to double this amount as part of its claim for "punitive, exemplary and/or statutory damages." Compl. ¶¶ 79-80. However, the present motion provides no support for the proposition that punitive damages are available for wire fraud, or that doubling of the amount in the transfer is the appropriate measure of such damages. The same flaws exist in Plaintiff's second claim for additional damages – totaling $41,016.90. Plaintiff ties this claim to Count Five of his Complaint, captioned "Fraud; False Wire Transfer Banking Document; Forgery." *Id.* ¶¶ 81-92. As with its other claim for additional damages, Plaintiff fails to provide any support for the proposition that it is entitled to compensatory damages in the amount of the alleged transfer, that punitive damages are appropriate, and that doubling of the alleged transfer is the appropriate measure of such punitive damages. In addition, the Court notes that for both of these claims, Plaintiff has failed to provide proof of the applicable exchange rate, which appears necessary to evaluate the evidentiary basis for Plaintiff's requested damages.

Accordingly, because Plaintiff provides no legal basis upon which the Court may award damages for a significant portion of the sum Plaintiff seeks, the Court will deny Plaintiff's

Motion for Default Judgment without prejudice. Plaintiff remains free to file a renewed motion for default judgment that provides a clearer basis for the full amount of damages sought, or that seeks a lower amount of damages. However, in order to allow Defendants the opportunity to respond to this Memorandum Opinion and the accompanying Order and follow the Court's repeated instruction to participate in this litigation, Plaintiff shall not file any such motion until October 1, 2014.

## IV. CONCLUSION

Default judgments are generally disfavored by courts "perhaps because it seems inherently unfair to use the court's power to enter and enforce judgments as a penalty for delays in filing." *Jackson*, 636 F.2d at 835. Nevertheless, "the default entry and judgment play an important role in the maintenance of an orderly, efficient judicial system. . . . [They] represent[] a means of encouraging an unwilling or uncooperative party to honor the rules established for litigation in the federal courts and provide[] the nondefaulting party an expeditious path to follow when an adversary does not do so or simply abandons the contest." 10 A C. Wright & A. Miller, Federal Practice and Procedure § 2693 (3d ed. 2006). Here, the Court has attempted to strike a balance between these two competing principles. Defendants have indicated their disagreement with Plaintiff's Complaint, but they have repeatedly disregarded the Court's instructions as to the appropriate means for contesting this lawsuit. Therefore, considering whether to vacate the entry of default *sua sponte* in light of Defendants' actions, the Court concludes that such a decision is unwarranted at this time. Nevertheless, because Plaintiff's present motion for default judgment is clearly lacking, the Court DENIES WITHOUT PREJUDICE Plaintiff's [19] Request for Default Judgment; or, in the Alternative, Motion for Default Judgment. Plaintiff may not file a renewed motion for default judgment until October 1, 2014, at the earliest. In the interim,

Defendants remain free to heed the Court's repeated instruction that they or their counsel enter an appearance in this action and raise any valid defenses they may have to Plaintiff's Complaint. An appropriate Order accompanies this Memorandum Opinion.

                                                      /s/
                                        COLLEEN KOLLAR-KOTELLY
                                        United States District Judge